# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **J. D. THOMPSON, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-11674** |
| **WARDEN TIM HOOPER** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Petitioner, J. D. Thompson, III, is a state prisoner incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. On April 2, 2015, he was convicted of aggravated incest, attempted sexual battery of a victim under 13, and sexual battery under Louisiana law.[1] On June 23, 2015, he was sentenced as follows: on the aggravated incest conviction, to a term of fifty years imprisonment without the benefit of probation, parole, or suspension of sentence; on the attempted sexual battery conviction, to a term of twenty-five years imprisonment; and on the sexual battery conviction, to a term of ten years imprisonment without the benefit of probation, parole, or suspension of sentence. It was ordered that his sentences run concurrently.[2] On April 15, 2016, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[3] The Louisiana Supreme Court then denied his related writ application on April 13, 2017.[4] After that ruling, he filed neither a petition for writ of certiorari with the United States Supreme Court[5] nor an application for post-conviction relief in the state courts.[6]

---

[1] State Rec., Vol. 3 of 4, transcript of April 2, 2015, pp. 68-69; State Rec., Vol. 1 of 4, minute entry dated April 2, 2015; State Rec., Vol. 1 of 4, jury verdict forms.
[2] State Rec., Vol. 3 of 4, transcript of June 30, 2015.
[3] State v. Thompson, No. 2015 KA 1518, 2016 WL 1535160 (La. App. 1st Cir. Apr. 15, 2016); State Rec., Vol. 4 of 4.
[4] State v. Thompson, 216 So. 3d 793 (La. 2017); State Rec., Vol. 3 of 4.
[5] See Rec. Doc. 1, p. 2.
[6] See id. at pp. 2-3.

Instead, he proceeded directly to federal court, filing the instant federal habeas corpus application asserting the same three claims he exhausted in the state courts on direct review.[7] When he later realized that he had sought federal relief prematurely, he filed a motion asking that these proceedings be stayed while he pursues an ineffective assistance of counsel claim in the state courts on collateral review.[8] The state was ordered to file a response to that motion.[9] The state thereafter filed a response opposing the motion,[10] and petitioner filed a reply to the state's response.[11]

In Rhines v. Weber, 544 U.S. 269 (2005), the United States Supreme Court explained that, in limited circumstances, it is appropriate for a federal district court to stay habeas corpus proceedings. In Rhines, the petitioner had filed a federal habeas corpus application asserting a number of claims; however, the district court subsequently determined that some of those claims were unexhausted. In light of that determination, the petitioner moved the district court to hold his federal application in abeyance while he returned to the state courts to exhaust the unexhausted claims. The district court granted that motion and issued a stay conditioned upon the petitioner commencing state court exhaustion proceedings within sixty days and then returning to the federal court within sixty days of the exhaustion of his claims in the state courts. The state appealed that decision, and the United States Eighth Circuit Court of Appeals vacated the stay and remanded the

---

[7] Rec. Doc. 1.
[8] Rec. Doc. 7. Pursuant to 28 U.S.C. § 636(b) and this Court's Local Rules, the motion has been referred to the undersigned United States Magistrate Judge. "A magistrate judge has authority to address a motion to stay a proceeding, when the order is not dispositive in that it merely suspends the proceedings and does not result in an absolute denial of ultimate relief." Pierre v. Cain, Civ. Action No. 15-5252, 2016 WL 1408581, at *1 n.1 (E.D. La. April. 11, 2016) (Roby, M.J.); accord Kang v. Cain, Civ. Action No. 15-2318, 2016 WL 866728, at *3 (E.D. La. Mar. 7, 2016) (Wilkinson, M.J.).
[9] Rec. Doc. 9.
[10] Rec. Doc. 14.
[11] Rec. Doc. 16.

case to the district court. However, the United States Supreme Court then granted certiorari and

vacated the Court of Appeals' judgment. In doing so, the Supreme Court noted:

> Fourteen years before Congress enacted AEDPA, we held in Rose v. Lundy,
> 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that federal district courts
> may not adjudicate mixed petitions for habeas corpus, that is, petitions containing
> both exhausted and unexhausted claims. We reasoned that the interests of comity
> and federalism dictate that state courts must have the first opportunity to decide a
> petitioner's claims. Id., at 518-519, 102 S.Ct. 1198. We noted that "[b]ecause 'it
> would be unseemly in our dual system of government for a federal district court to
> upset a state court conviction without an opportunity to the state courts to correct a
> constitutional violation,' federal courts apply the doctrine of comity." Id., at 518,
> 102 S.Ct. 1198 (quoting Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed.
> 761 (1950)). That doctrine "'teaches that one court should defer action on causes
> properly within its jurisdiction until the courts of another sovereignty with
> concurrent powers, and already cognizant of the litigation, have had an opportunity
> to pass upon the matter.'" 455 U.S., at 518, 102 S.Ct. 1198.
>         Accordingly, we imposed a requirement of "total exhaustion" and directed
> federal courts to effectuate that requirement by dismissing mixed petitions without
> prejudice and allowing petitioners to return to state court to present the unexhausted
> claims to that court in the first instance. Id., at 522, 102 S.Ct. 1198. When we
> decided Lundy, there was no statute of limitations on the filing of federal habeas
> corpus petitions. As a result, petitioners who returned to state court to exhaust their
> previously unexhausted claims could come back to federal court to present their
> perfected petitions with relative ease. See Slack v. McDaniel, 529 U.S. 473, 486,
> 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (dismissal without prejudice under Lundy
> "contemplated that the prisoner could return to federal court after the requisite
> exhaustion").
>         The enactment of AEDPA in 1996 dramatically altered the landscape for
> federal habeas corpus petitions. AEDPA preserved Lundy's total exhaustion
> requirement, see 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas
> corpus ... shall not be granted unless it appears that ... the applicant has exhausted
> the remedies available in the courts of the State"), but it also imposed a 1-year
> statute of limitations on the filing of federal petitions, § 2244(d). Although the
> limitations period is tolled during the pendency of a "properly filed application for
> State post-conviction or other collateral review," § 2244(d)(2), the filing of a
> petition for habeas corpus in federal court does not toll the statute of limitations,
> Duncan, 533 U.S., at 181-182, 121 S.Ct. 2120.
>         As a result of the interplay between AEDPA's 1-year statute of limitations
> and Lundy's dismissal requirement, petitioners who come to federal court with
> "mixed" petitions run the risk of forever losing their opportunity for any federal
> review of their unexhausted claims. If a petitioner files a timely but mixed petition
> in federal district court, and the district court dismisses it under Lundy after the
> limitations period has expired, this will likely mean the termination of any federal
> review. For example, if the District Court in this case had dismissed the petition

3

because it contained unexhausted claims, AEDPA's 1-year statute of limitations would have barred Rhines from returning to federal court after exhausting the previously unexhausted claims in state court. Similarly, if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim. The problem is not limited to petitioners who file close to the AEDPA deadline. Even a petitioner who files early will have no way of controlling when the district court will resolve the question of exhaustion. Thus, whether a petitioner ever receives federal review of his claims may turn on which district court happens to hear his case.

We recognize the gravity of this problem and the difficulty it has posed for petitioners and federal district courts alike. In an attempt to solve the problem, some district courts have adopted a version of the "stay-and-abeyance" procedure employed by the District Court below. Under this procedure, rather than dismiss the mixed petition pursuant to Lundy, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

Rhines, 544 U.S. at 273-76.

The Supreme Court then determined that the stay and abeyance procedure is permissible, but the Supreme Court expressly cautioned that the procedure should be employed only in limited circumstances:

Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. Duncan, *supra*, at 180, 121 S.Ct. 2120 ("[D]iminution of statutory incentives to proceed first in state court would ... increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").

For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. … Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. See, *e.g.*, Zarvela, 254 F.3d, at 381 ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. See id., at 380-381.

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. See Lundy, 455 U.S., at 522, 102 S.Ct. 1198 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief"). In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. See id., at 520, 102 S.Ct. 1198 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

Rhines, 544 U.S. at 277-78.

In the instant case, the state argues that the requested stay should be denied because the petitioner has not filed a mixed petition as in Rhines (in that all claims currently included in his petition are exhausted) and because he apparently has not yet filed his state post-conviction application. The undersigned is not persuaded by either of those arguments.

Obviously, it is true that the instant application is not currently a mixed petition. However, it would seem churlish to fault a petitioner who has complied with federal law by filing a federal application containing only exhausted claims, especially where, as here, he makes clear that the

additional unexhausted claim he wishes to later consolidate into the proceeding is the one he intends to pursue in the state courts. If, along with his motion to stay, petitioner had simply simultaneously filed a motion to amend his petition to include that claim, *a motion which the undersigned would have granted,* the state presumably would agree that <u>Rhines</u> would then be directly applicable. This Court sees no reason to find <u>Rhines</u> inapplicable based solely on the fact that the unsophisticated *pro se* petitioner failed to file such a motion to amend.

Second, it is also true that petitioner apparently has not yet filed a post-conviction application in state court asserting his unexhausted claim. However, that was also true of the petitioner in <u>Rhines</u>, and that defect was easily remedied by simply requiring that petitioner to file his state application within a specified period of time. That same procedure will work equally well in this case.

Additionally, for the following reasons, the Court finds that the <u>Rhines</u> factors it must weigh in determining the propriety of a stay are all favorable to petitioner.

First, the Court must consider whether the petitioner had "good cause" for his failure to exhaust the ineffective assistance of counsel claim. He clearly had good cause for failing to assert that claim in his direct appeal: Louisiana courts normally will not consider such claims on direct appeal. <u>See</u> <u>State v. Truitt</u>, 500 So. 2d 355, 359 (La. 1987) ("The appropriate avenue for asserting a claim of ineffective assistance of counsel is through postconviction relief, not by direct appeal.").

Second, this Court must consider whether the unexhausted claim is "plainly meritless." While this Court does not express an opinion as to whether petitioner will ultimately be entitled to relief based on his unexhausted ineffective assistance of counsel claim, the state does not argue, and this Court has no basis on which to conclude, that the claim is "plainly meritless."

6

Third, timeliness concerns should not defeat the granting of a stay in this case. The state concedes that the instant petition was timely filed,[12] and, **if petitioner pursues his state application within the deadline set forth in this order**, the state's two-year state prescriptive period would not bar his state application. Additionally, there is no evidence whatsoever that petitioner has engaged in abusive litigation tactics or intentional delay.

In light of those considerations, the undersigned finds that a stay is appropriate.

Accordingly,

**IT IS ORDERED** that petitioner's motion to stay, Rec. Doc. 7, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this action **CLOSED** for statistical purposes.

**IT IS FURTHER ORDERED** that petitioner file his state post-conviction application with the state district court within **thirty (30) days** of this order and, if necessary, seek timely review of any denial of that application in the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction in this matter and that petitioner is allowed to file a motion to reopen these proceedings, **along with an amended habeas corpus petition incorporating his ineffective assistance of counsel claim**, within **thirty (30) days** after the Louisiana Supreme Court's ruling on his post-conviction writ application.

New Orleans, Louisiana, this thirtieth day of April, 2018.

_____

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[12] Rec. Doc. 14, pp. 1 and 6.