## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

J. D. THOMPSON, III                                         CIVIL ACTION

VERSUS                                                     NO. 17-11674

WARDEN TIM HOOPER                               SECTION: "G"(3)

## REPORT AND RECOMMENDATION

Petitioner, J. D. Thompson, III, a Louisiana state prisoner, filed the instant federal

application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons,

it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On April 2, 2015, petitioner was convicted under Louisiana law of aggravated incest

(Count 1), attempted sexual battery of a victim under 13 (Count 2), and sexual battery (Count 3).[1]

On June 30, 2015, he was sentenced as follows: fifty years without the benefit of probation, parole,

or suspension of sentence on Count 1; twenty-five years on Count 2; and ten years without the

benefit of probation, parole, or suspension of sentence on Count 3. It was ordered that those

sentences be served concurrently.[2] On April 15, 2016, the Louisiana First Circuit Court of Appeal

affirmed his convictions and sentences.[3] The Louisiana Supreme Court then denied his related

writ application on April 13, 2017.[4]

Petitioner then filed the instant federal habeas corpus application asserting the same three

claims he exhausted in the state courts on direct review.[5] He later filed a motion asking that these

---

[1] State Rec., Vol. 3 of 4, transcript of April 2, 2015, pp. 68-69; State Rec., Vol. 1 of 4, minute entry dated April 2, 2015; State Rec., Vol. 1 of 4, jury verdict forms.
[2] State Rec., Vol. 3 of 4, transcript of June 30, 2015.
[3] State v. Thompson, No. 2015 KA 1518, 2016 WL 1535160 (La. App. 1st Cir. Apr. 15, 2016); State Rec., Vol. 4 of 4.
[4] State v. Thompson, 216 So. 3d 793 (La. 2017); State Rec., Vol. 3 of 4.
[5] Rec. Doc. 1.

federal proceedings be stayed while he pursued an ineffective assistance of counsel claim in the state courts on collateral review.[6] Former United States Magistrate Judge Daniel E. Knowles, III, granted that motion, and this case was administratively closed.[7]

On January 8, 2020, this matter was then reopened at petitioner's request, the stay was lifted, and he was permitted to amend his federal application to include the ineffective assistance of counsel claim he had pursued in the state courts.[8]

The state filed responses addressing both the original three claims and the newly added fourth claim.[9] Petitioner filed a reply to the state's response addressing the original three claims.[10] The Court thereafter gave him an opportunity to file an additional reply to state's separate response addressing the fourth claim;[11] however, no additional reply was filed.

The state concedes that petitioner's federal application was timely filed.[12]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court), cert. denied, No. 19-6413, 2020 WL 1906607 (U.S. Apr. 20, 2020).  The applicable standards of review are now as follows.

---

[6] Rec. Doc. 7.
[7] Rec. Doc. 17; Thompson v. Hooper, Civ. Action No. 17-11674, 2018 WL 2013105 (E.D. La. Apr. 30, 2008).  After Magistrate Judge Knowles' retirement, this matter was reassigned to the undersigned United States Magistrate Judge.
[8] Rec. Doc. 26.
[9] Rec. Docs. 14 and 25.
[10] Rec. Doc. 16.
[11] Rec. Doc. 26.
[12] Rec. Doc. 14, pp. 1 and 6; Rec. Doc. 25, p. 1.

As to pure questions of fact, factual findings are presumed to be correct and a federal court must give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

<u>Woodall</u>, 572 U.S. at 426 (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." <u>Renico v. Lett</u>, 559 U.S. 766, 779 (2010) (emphasis added).  The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  <u>Woodall</u>, 572 U.S. at 417.

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> On October 21, 2013, T.M.[FN 2] (the victim) reported to her school counselor that she had been molested by defendant, her grandfather by marriage.[FN 3]  Several days later, T.M. spoke with Jo Beth Rickels, a forensic interviewer with the Children's Advocacy Center (CAC) for St. Tammany and Washington Parishes.  In the forensic interview, T.M. described two distinct instances of inappropriate conduct involving defendant.
>
> > [FN 2]  In accordance with La. R.S. 46:1844(W), the victim herein is referred to only by her initials or as "the victim."
> >
> > [FN 3]  T.M.'s date of birth is January 10, 1999, and defendant's date of birth is January 6, 1966.
>
> According to T.M., the first incident occurred approximately three years before the forensic interview (approximately around October 2010), at her grandmother's trailer in Franklinton.  On this occasion, T.M.'s grandmother (with whom she occasionally lived) was at work.  Defendant came into a bedroom where T.M. was watching television, and he started to touch her body and kiss her. Defendant then exposed himself and asked T.M. to bend over, but she declined to do so.  T.M. stated that she reported this incident to some members of her family,

including her aunt, grandmother, and mother, but she was told not to tell anyone else.

T.M. also described an incident that occurred in August 2013. This incident also took place at her grandmother's trailer. T.M. stated that she walked back to the trailer from a family gathering in order to bathe and use the Internet. Defendant entered the trailer's bathroom while T.M. was seated on the toilet and began a conversation about giving her money for the school fair. T.M. stood up and attempted to put on her clothes, but defendant maneuvered her against the bathroom counter and placed his finger inside her vagina. According to T.M., defendant asked to have sex with her, but she refused. Defendant eventually stopped touching T.M. when T.M.'s brother entered the trailer.

T.M. testified at trial, largely confirming the information that she conveyed in her CAC interview. With respect to the first incident, T.M. stated that defendant's hands touched her breasts over her clothes, and he kissed her on the lips. She stated that his hands did not touch her anywhere else. T.M. further described that when defendant told her to bend over, he stated that it "wasn't going to hurt," and she noticed his penis was erect. In additional testimony about the incident, T.M. stated that defendant gave her money in exchange for her not telling anyone. She also testified that defendant exposed his penis to her that time, but through his pants.[13]

## III. Petitioner's Claims

## A. Double Jeopardy

Petitioner claims that his prosecution for both aggravated incest (Count 1) and sexual battery (Count 2) violated the prohibition against double jeopardy.[14] On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his first assignment of error, defendant contends that his prosecution for both aggravated incest and sexual battery in counts one and two, based on the same incident, violated the prohibition against double jeopardy under the federal and state constitutions.
>
> The Double Jeopardy Clause of the federal and state constitutions not only prohibits successive trials for the same offense, but also protects against multiple punishments for the same offense. See U.S. Const. amend. V; La. Const. art. I, § 15; La. C.Cr.P. art. 591; State v. Murray, 2000-1258 (La. 9/18/01), 799 So.2d 453, 454-55 (per curiam). Defendant was subjected to only one trial, so he does not contend that his right to be free from multiple trials for the same offense has been violated. Rather, he invokes the Double Jeopardy Clause's protection against multiple punishments for the same offense.

---

[13] State v. Thompson, No. 2015 KA 1518, 2016 WL 1535160, at *1-2 (La. App. 1st Cir. Apr. 15, 2016); State Rec., Vol. 4 of 4.

[14] As noted, he was ultimately convicted on Count 2 of only the lesser offense of *attempted* sexual battery.

In determining whether two offenses constitute the "same offense" for double jeopardy purposes, Louisiana courts have applied two different standards: the "same elements" test, see Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), and the "same evidence" test. City of Baton Rouge v. Ross, 94-0695 (La. 4/28/95), 654 So.2d 1311, 1322. The Blockburger "same elements" test requires a comparison of the elements of the statutes under which a defendant is charged. After the statutory elements are compared, if each statute requires proof of an additional fact which the other does not, then those statutes do not define the same offense for double jeopardy purposes. Ross, 654 So.2d at 1323; see Blockburger, 284 U.S. at 304, 52 S.Ct. at 182. The "same evidence" test focuses upon the actual physical and testimonial evidence necessary to secure a conviction. Ross, 654 So.2d at 1322. Under this test, if the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy. Ross, 654 So.2d at 1322; State v. Steele, 387 So.2d 1175, 1177 (La. 1980). The court's concern is with the "evidential focus" of the facts adduced at trial in light of the verdict rendered, i.e., how the evidence presented satisfies the prosecution's burden of proof. Ross, 654 So.2d at 1322; State v. Miller, 571 So.2d 603, 606 (La. 1990).

As the Second Circuit noted in State v. Redfearn, 44,709 (La. App. 2d Cir. 9/23/09), 22 So.3d 1078, 1091, writ denied, 2009-2206 (La. 4/9/10), 31 So.3d 381, sexual battery requires proof of an additional fact that aggravated incest does not, and vice versa. Sexual battery requires that the offender touch the victim on the anus or genitals, or the victim touch the offender on the anus or genitals. See La. R.S. 14:43.1(A) (prior to amendment). This element is not required for aggravated incest. Aggravated incest requires proof that the defendant had a familial relationship with the victim. See La. R.S. 14:78.1(A) (prior to repeal). In addition, aggravated incest prohibits any lewd fondling or touching of the person of the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both. See La. R.S. 14:78.1(B)(2) (prior to repeal). These elements are not required for sexual battery. Therefore, a single prosecution for aggravated incest and sexual battery (and a separate conviction for each aggravated incest and attempted sexual battery) does not constitute double jeopardy under Blockburger.

Likewise, applying the same evidence test, we conclude that the State did not rely upon the same evidence to satisfy its burden of proof for both convictions. The evidence demonstrated that defendant kissed T.M., fondled her breasts, exposed himself to her, and directed her to bend over (while simultaneously telling her it would not hurt). To prove aggravated incest, the State relied upon the evidence that defendant was T.M.'s grandfather by marriage and that he kissed her and fondled her breasts, thereby lewdly fondling and touching her with the intent to arouse or satisfy the sexual desires of himself, T.M., or both. To prove attempted sexual battery, the State relied more upon the circumstantial nature of defendant's actions in exposing his penis, instructing T.M. to bend over, and telling her that it would not hurt. In fact, without more, the evidence relied upon by the State to prove aggravated incest likely would have been insufficient to prove attempted

sexual battery. Therefore, the same evidence could not have supported both convictions.

        This assignment of error is without merit.[15]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[16]

Because a double jeopardy claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Ducre v. Cain, Civ. Action No. 12-2506, 2014 WL 2719172, at *9 (E.D. La. June 16, 2014) (citing Carlile v. Cockrell, No. 01-10318, 2002 WL 31319380 (5th Cir. Oct. 2, 2002)). For the following reasons, the Court finds that he has made no such showing.

The federal protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988). The United States Supreme Court has explained:

> That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); see also Department of Revenue v. Kurth Ranch, 511 U.S. 767, 769 n.1 (1994). As the state court correctly observed, petitioner's

---

[15] State v. Thompson, No. 2015 KA 1518, 2016 WL 1535160, at *4-5 (La. App. 1st Cir. Apr. 15, 2016); State Rec., Vol. 4 of 4.

[16] State v. Thompson, 216 So. 3d 793 (La. 2017); State Rec., Vol. 3 of 4.

double jeopardy claim implicates the third category of cases, in that he is arguing that aggravated incest and sexual battery are essentially the same offense.

It must first be noted that it is immaterial for double jeopardy purposes that two offenses arose from the same course of conduct, so long as the offenses were in fact distinct.  See, e.g., United States v. Morgan, 437 F. App'x 354, 355-56 (5th Cir. 2011); Johnson v. Terrell, No. 95-30339, 1995 WL 581839, at *1 (5th Cir. Sept. 6, 1995).  Rather, as the United States Fifth Circuit Court of Appeals has explained:

> We apply the Blockburger v. United States[, 284 U.S. 299 (1932),] test to determine whether two different statutes punish the same offense.  Blockburger requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not".  If either statute contains no element not also found in the other statute, the statutes "fail" the Blockburger test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent".  Two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes.  The Blockburger inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court.  Thus, the question is not whether *this* violation of [the first statute] also constituted a violation of [the second statute], but whether *all* violations of the former statute constitute violations of the latter.

United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) (footnotes omitted).

The state court correctly identified Blockburger as the controlling federal law in the above-quoted state court opinion.  Further, for the reasons clearly and correctly explained by that court in the opinion, aggravated incest and sexual battery are distinct offenses under Louisiana law, with each including at least one element missing from the other.  Accordingly, Louisiana's aggravated incest and sexual battery statutes clearly pass the Blockburger test, and the state court decision denying petitioner's double jeopardy claim was therefore neither contrary to, nor involved an unreasonable application of, clearly established federal law.

Out of an abundance of caution, the undersigned notes that Louisiana law also provides protections against double jeopardy. La. Const. art. I, § 15; La. Code Crim. Proc. art. 591. However, a federal habeas court need to not address the issue of whether a petitioner's conviction violated a *state* prohibition against double jeopardy. On the contrary, federal habeas corpus relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Brown v. Tanner, Civ. Action No. 11-1102, 2011 WL 4746563, at *4 (E.D. La. Aug. 29, 2011), adopted, 2011 WL 4746104 (E.D. La. Oct. 6, 2011). Nevertheless, in any event, the Louisiana Supreme Court clarified in 2017 that the state and federal protections are coextensive:

> [W]e find no significant difference between U.S. Const. Amend. V and La. Const. art. I, § 15 supporting the notion that Louisiana's constitution affords greater protection against double jeopardy than the federal constitution or requires this state's courts to apply two distinct tests – one federal and one state – to analyze double jeopardy claims. Therefore, Louisiana courts are bound only to apply the standard established by the U.S. Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to protect against double jeopardy and can dispense with Louisiana's separate "same evidence" test.

State v. Frank, 234 So. 3d 27, 28 (La. 2017).

Because the state court decision denying petitioner's federal double jeopardy claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, the AEDPA requires this federal court to defer to that decision. See 28 U.S.C. § 2254(d)(1).

## B. Sufficiency of the Evidence

Petitioner also claims that there was insufficient evidence to support his conviction of attempted sexual battery on Count 2.[17] On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

---

[17] He does not challenge the sufficiency of the evidence to support his convictions for aggravated incest (Count 1) and sexual battery (Count 3).

[D]efendant contends that the evidence presented at trial was insufficient to support his conviction for attempted sexual battery under count two. Defendant argues that the record is devoid of any evidence that he attempted to touch the genitals or anus of T.M. or attempted to have her touch his genitals or anus during the period specified in the bill of information (between July 1, 2010 and January 10, 2012).

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr.P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732.

As applicable here, sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim when the offender acts without the consent of the victim, or when the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender. See La. R.S. 14:43.1(A)(1) & (2) (prior to amendment by 2015 La. Acts, No. 256, § 1).

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A). An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt. La. R.S. 14:27(C).

In the instant case, defendant challenges the sufficiency of the evidence related to his conviction of attempted sexual battery on count two only. This

conviction stems from the first of the two incidents described by T.M. in her CAC interview and at trial.

We first note that defendant is correct in his assertion that the record does not contain any evidence that, during the first incident, he touched the genitals or anus of T.M. or that he had T.M. touch his genitals or anus. As T.M. described the incident in her CAC interview and at trial, defendant entered a bedroom where she was watching television, and he kissed her and touched her breasts over her clothing. Defendant did not touch T.M.'s vagina or anus during this incident, nor did he cause T.M. to touch his penis or anus. As a result, there is insufficient proof of a completed sexual battery stemming from this first incident, eliminating the possibility of a compromise verdict. See State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251 (La. 1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).

We must now determine whether the facts and circumstances support the jury's ultimate conclusion that defendant committed an act for the purpose of and tending directly toward the accomplishing of a sexual battery while having the specific intent to commit a crime. See La. R.S. 14:27(A) & 14:43.1(A)(1) & (2) (prior to 2015 amendment). T.M. described in her CAC interview and at trial that, in addition to kissing her and fondling her breasts on the occasion in question, defendant also exposed himself to her and told her to bend over. According to T.M., defendant's penis was erect and he told her that "it wasn't going to hurt." When T.M. refused to comply, defendant apparently did not press the issue further, perhaps because he needed to leave the residence to pick up T.M.'s grandmother from work or because others were present in other parts of the trailer.

Viewed in the light most favorable to the state, the evidence at trial indicates that during the incident in question, defendant kissed T.M., fondled her breasts, exposed himself to her, and directed her to bend over (while simultaneously telling her it would not hurt). Based on these facts, the jury concluded that defendant's actions evinced both a specific intent and an attempt to commit sexual battery. We cannot say that the jury's determination was irrational under the facts and circumstances presented to it. Ordodi, 946 So.2d at 662. The evidence presented at trial was sufficient to support the jury's verdict on count two.

This assignment of error is without merit.[18]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[19]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the

---

[18] State v. Thompson, No. 2015 KA 1518, 2016 WL 1535160, at *2-4 (La. App. 1st Cir. Apr. 15, 2016); State Rec., Vol. 4 of 4.

[19] State v. Thompson, 216 So. 3d 793 (La. 2017); State Rec., Vol. 3 of 4.

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Davila v. Davis, 650 F. App'x 860, 866 (5th Cir. 2016), aff'd, 137 S. Ct. 2058 (2017). For the following reasons, the Court finds that he has made no such showing.

As the state court correctly noted in its opinion denying petitioner's claim, claims challenging the sufficiency of the evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standard of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 567 U.S. 37, 43 (2012); see also Coleman v. Johnson, 566 U.S. 650, 651 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 F. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 566 U.S. at 655 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

In the instant case, the elements of the crime and petitioner's guilt of attempted sexual battery were established through the victim's testimony, and it is clear that *a victim's testimony alone is generally sufficient evidence to support a conviction.*  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 9430310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Johnson v. Cain, Civ. Action No. 16-927, 2017 WL 5176386, at *15 (E.D. La. Apr. 25, 2017), adopted, 2017 WL 5157604 (E.D. La. Nov. 7, 2017), certificate of appealability denied, No. 17-30933, 2018 WL 7020134 (5th Cir. Oct. 31, 2018), cert. denied, 139 S. Ct. 1226 (2019); Craddock v. Cain, Civ. Action No. 10-2044, 2014 WL 2083115, at *11 (E.D. La. May 19, 2014); Stogner v. Cain, Civ. Action No. 12-2703, 2013 WL 2444667, at *11 (E.D. La. June 4,

2013). Although petitioner continues to argue that the victim's testimony was insufficient to show that a sexual battery was *completed*, that, as the state court noted, is immaterial. On Count 2, petitioner was *not* convicted of sexual battery – he was convicted of *attempted* sexual battery.

Moreover, although petitioner claims that the victim lied, the jury obviously found her testimony credible. A federal habeas court generally will not grant relief on an insufficient evidence claim premised on credibility issues. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007). Petitioner has identified no reason (this Court has found none) that this general rule should not be applied in the instant case.

In summary, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

### C. Right to Present a Defense

Petitioner next claims that his right to present a defense was violated the trial court's refusal to allow Shirley Marie Warren to testify concerning threats allegedly made by the victim to accuse

three other individuals of sexual assault. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his final assignment of error, defendant asserts that the trial court improperly excluded testimony, thereby hindering his right to present a defense. Specifically, defendant intended to introduce evidence that the victim had threatened to call the police and tell them that three men (acquaintances or boyfriends of her mother) had sexually assaulted her. The trial court refused to allow this evidence to be presented to the jury.
>
> In a prosecution for sexually assaultive behavior, La. C.E. art. 412 prohibits the introduction of evidence of the victim's past sexual behavior, with certain limited exceptions. "Past sexual behavior" is defined as sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged. La. C.E. art. 412(F). If a defendant wishes to offer evidence of past sexual behavior pursuant to one of the exceptions, he must file a motion stating his intent to do so. La. C.E. art. 412(C). The trial court must then hold a closed hearing to determine whether the offered evidence is admissible. La. C.E. art. 412(E).
>
> Alternatively, the Louisiana Supreme Court has held that a defendant may present evidence that a victim made prior false allegations regarding sexual activity for impeachment purposes pursuant to La. C.E. art. 607(C). State v. Smith, 98-2045 (La. 9/8/99), 743 So.2d 199. In Smith, the defendant was convicted of attempted indecent behavior with a juvenile. During trial, the defense counsel cross-examined the victim's mother's friend regarding similar accusations the victim had made against her cousin and allegedly recanted. The State thereafter moved to prevent any further such questioning in accordance with La. C.E. art. 412. After a hearing outside the jury's presence, the trial court applied Article 412 and excluded any evidence of prior false allegations. The Supreme Court held that Article 412, the "rape shield statute" that prohibits the introduction of evidence of the victim's past sexual behavior, does not preclude the introduction of evidence of the victim's prior false accusations for impeachment purposes. Smith, 743 So.2d at 202-03. The Supreme Court concluded that when a defendant seeks to introduce evidence that the victim made prior false allegations of molestation, the issue is one of credibility, and Article 412 is inapplicable. The Smith court stated:
>
>> When a defendant seeks to introduce evidence that the victim has made such prior false accusations, the trial judge must evaluate that evidence by determining whether reasonable jurors could find, based on the evidence presented by defendant, that the victim had made prior false accusations and whether all other requirements of the Code of Evidence have been satisfied.
>
> 743 So.2d at 203-04.
>
> Thus, two requirements must exist before evidence of prior false accusations of sexual misconduct can be considered as impeachment evidence.

First, the activity must be of a sexual nature. Second, there must be evidence that the statement is false. See State v. Richard, 2001-1112 (La. App. 1st Cir. 2/15/02), 812 So.2d 737, 739, writ denied, 2002-1264 (La. 11/22/02), 829 So.2d 1038. Assuming this initial burden is met, all other standards for the admissibility of evidence apply. Smith, 743 So.2d at 203.

Constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. State v. Governor, 331 So.2d 443, 449 (La. 1976). "Relevant evidence" is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than without the evidence. La. C.E. art. 401. The trial judge in deciding the issue of relevancy must determine whether the evidence bears a rational connection to the fact at issue in the case. State v. Williams, 341 So.2d 370, 374 (La. 1976). Except as limited by the Code of Evidence and other laws, all relevant evidence is admissible and all irrelevant evidence is inadmissible. La. C.E. art. 402. Although relevant, evidence may nonetheless be excluded if the probative value is substantially outweighed by its prejudicial effect. See La. C.E. art. 403. A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Easley, 432 So.2d 910, 912 (La. App. 1st Cir. 1983).

In the instant case, the evidence regarding T.M.'s alleged false accusations was elicited by defense counsel at trial. In cross-examining the victim, defense counsel questioned T.M. about whether she threatened to accuse them of sexually abusing her. T.M. replied that she had not.

During presentation of his case-in-chief, defendant called Shirley Marie Warren to testify. Defense counsel sought to question Ms. Warren regarding an incident that allegedly occurred in October or November of 2013, following defendant's arrest. Anticipating that Ms. Warren would testify to hearsay statements allegedly made by T.M., the trial court retired the jury and held a brief hearing to determine the admissibility of her testimony. Defense counsel explained that he intended to question Ms. Warren regarding T.M.'s alleged threat to accuse three of her mother's boyfriends of sexually assaulting her. The State argued that this proposed evidence did not fulfill the requirements of Smith, and also that with it, the defense sought to elicit information regarding a particular course of conduct, which is prohibited by La. C.E. art. 608(B). The trial court ultimately excluded this testimony, finding that the probative value on the issue of the victim's credibility was substantially outweighed by the risk of unfair prejudice in this particular case.

To the extent that defendant asserts this testimony should have been admissible as evidence of a prior false accusation under Smith, we note that defense counsel failed to present sufficient evidence at the brief hearing that the victim made a prior false accusation of sexual behavior. The victim herself denied having made such a statement during cross-examination. Ms. Warren, prior to the State's objection to her testimony, testified that T.M. came to her house and asked to use a telephone after having had a disagreement with members of her family. Ms. Warren testified outside of the presence of the jury that T.M. made a threat to call the police and report three men for sexually abusing her. However, she did not

testify regarding what she believed to be the veracity of this accusation. Defense counsel later attempted to elicit similar accusations from two other witnesses, but the trial court disallowed these lines of questioning. Defense counsel did not proffer the exact nature of the proposed testimony of either of these two witnesses.

Considering the above, had the trial court made its evidentiary ruling under Smith, the only evidence it had to consider was: (1) T.M.'s own statement that she made no such allegations of sexual abuse; and (2) Ms. Warren's statement that T.M. made such a statement, but with no corroborating evidence of whether such a statement was false or not. Therefore, unlike Smith, a reasonable jury could not have found from the evidence adduced at the midtrial hearing that the victim made a prior false accusation.

The trial court's ultimate ruling excluding the evidence resulted from the finding that any probative value of the evidence was greatly outweighed by its prejudicial effect. See La. C.E. art. 403. We agree. While defense counsel also sought to introduce this evidence as a prior inconsistent statement under La. C.E. art. 607(D)(2) (in addition to arguing that it qualified as a prior false accusation of sexual abuse), the introduction of this type of evidence is subject to the balancing test used by the trial court. In this case, the State argued that Ms. Warren's name did not appear anywhere in open file discovery and that she otherwise had nothing to do with the facts of this case. Therefore, while Ms. Warren's testimony might have been probative of T.M.'s credibility, it was outweighed by the unfair prejudice to the State and the risk of confusion to the jury. See La. C.E. art. 607(D)(2).

We do note that defendant was not completely precluded from attacking T.M.'s credibility. Defense counsel questioned multiple witnesses regarding T.M.'s reputation for truthfulness and veracity in the community. All ten defense witnesses, including several of T.M.'s family members, reported that T.M.'s reputation for truthfulness and veracity in the community was "bad." Despite the weight of evidence against T.M.'s credibility, the jury still returned three guilty verdicts against defendant. Therefore, under these particular circumstances, the trial court did not err or abuse its discretion in prohibiting this line of questioning. This assignment of error is without merit.[20]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[21]

The United States Supreme Court has held: "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal

---

[20] State v. Thompson, No. 2015 KA 1518, 2016 WL 1535160, at *5-8 (La. App. 1st Cir. Apr. 15, 2016); State Rec., Vol. 4 of 4.
[21] State v. Thompson, 216 So. 3d 793 (La. 2017); State Rec., Vol. 3 of 4.

defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984); accord Boyer v. Vannoy, 863 F.3d 428, 451 (5th Cir. 2017), cert. denied, 139 S. Ct. 54 (2018).  However, the United States Supreme Court has expressly noted:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

Holmes v. South Carolina, 547 U.S. 319, 326 (2006).  Moreover, the United States Fifth Circuit Court of Appeals has observed that when the United States Supreme Court has addressed whether the exclusion of evidence infringed on a defendant's right to present a defense, "[t]he Court's cases typically focus[ed] on *categorical prohibitions of certain evidence* and *not discretionary decisions to exclude evidence under general and otherwise uncontroversial rules*."  Caldwell v. Davis, 757 F. App'x 336, 339 (5th Cir. 2018) (emphasis added).

In considering petitioner's claim under the AEDPA standards of review, the Court first notes that there is no colorable argument that the state court's decision was "contrary to" clearly established federal law for the following reasons.

As noted *supra*, a state court decision violates the "contrary to" prong of the AEDPA analysis if "the state court applies a rule that *contradicts* the governing law set forth in the [United States] Supreme Court's cases." Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (emphasis added).  In making that determination, this Court notes that it is immaterial that the state court, in denying petitioner's claim, referenced only state law without also expressly identifying the federal standard.  See Caldwell, 757 F. App'x at 340 ("A state court does not need to expressly identify the federal standard.").  Instead, the issue is merely whether the court's analysis was *inconsistent*

with the federal standard.  Here, it was not; both the referenced state rule and the federal rule focus on whether the probative value of the evidence in question was outweighed by its prejudicial effect.

"A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent."  Wooten, 598 F.3d at 218.  Here, however, petitioner has not cited, and this Court's independent research has not found, such a case.

Therefore:

> Because [petitioner] cannot prevail on his claim that the state court's decision was "contrary to" federal law, he must show that it was an "unreasonable application" of federal law.  To be an "unreasonable application," there must be "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents.  Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (emphasis added).

Caldwell, 757 F. App'x at 341.  That standard obviously has not been met here, especially given the considerable leeway petitioner was afforded at trial to present other evidence regarding victim's reputation for a lack of credibility.

Because the state court decision was neither "contrary to" nor an "unreasonable application" of clearly established federal law, the AEDPA requires this Court to defer to the state court's decision denying this claim.

### D.  Ineffective Assistance of Counsel

Lastly, petitioner claims that he received ineffective of counsel.  When he asserted that claim in the state post-conviction proceedings, the state district court denied relief, simply stating: "The Court finds that Applicant has failed to prove grounds upon which relief shall be granted. Accordingly, the Court finds that the Application of the Defendant is without merit and must be

denied."[22]  Petitioner challenged that ruling by filing a related writ application;[23] however, in

denying that application, the Louisiana First Circuit Court of Appeal held:

> **WRIT DENIED ON THE SHOWING MADE.** Relator failed to include
> a copy of the bill of information, all pertinent minute entries and/or transcripts, and
> any other portions of the district court record that might support the claims raised
> in the application for postconviction relief.  Supplementation of this writ
> application and/or an application for rehearing will not be considered. See Uniform
> Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4-9. In the event relator elects
> to file a new application with this court, the application must be filed on or before
> February 8, 2019.  Any future filing on this issue should include the entire contents
> of this application, the missing items noted above, and a copy of this ruling.[24]

Rather than availing himself of that opportunity to file a new, non-deficient writ application with

the Court of Appeal, petitioner instead simply proceeded directly to the Louisiana Supreme Court.

The Louisiana Supreme Court then denied relief without assigning reasons.[25]

In light of the foregoing, the state argues that petitioner's ineffective assistance of counsel

claim is unexhausted.  The state further argues that, due his failure to exhaust the claim in the state

courts, it is procedurally barred from federal review.  The state is correct.

The United States Supreme Court has clearly held:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust
> available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the
> opportunity to pass upon and correct alleged violations of its prisoners' federal
> rights.  To provide the State with the necessary "opportunity," the prisoner must
> "fairly present" his claim in *each appropriate state court* (including a state supreme
> court with powers of discretionary review) ….

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added; citation and quotation marks omitted).

Moreover, the prisoner's claims must have been presented to those courts "in a procedurally proper

manner *according to the rules of the state courts*."  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir.

---

[22] Rec. Doc. 25-3.
[23] Rec. Doc. 25-4, p. 1-23.
[24] Rec. Doc. 25-5; State v. Thompson, No. 2018 KW 1360, 2018 WL 6522137 (La. App. 1st Cir. Dec. 10, 2018).
[25] State v. Thompson, 280 So. 3d 156 (La. 2019).

1988) (emphasis added; quotation marks omitted); see also Carty v. Thaler, 583 F.3d 244, 254 (5th Cir. 2009) ("Fair presentation does not entertain presenting claims for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor. The purposes of the exhaustion requirement would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it." (citation and quotation marks omitted)).

In the instant case, it is beyond debate that petitioner failed to "fairly present" his ineffective assistance of counsel claim to at least one level of the state court system, namely the intermediate court of appeal. As noted, that court expressly denied petitioner's writ application containing the claim *because the application failed to comply with the court's procedural rules.* Although the court offered petitioner an opportunity to correct his error by submitting a new, compliant writ application, but he elected not to do so. Therefore, because his ineffective assistance of counsel claim was never "fairly presented" to the Louisiana First Circuit Court of Appeal in a procedurally proper manner according to that court's rules, the claim is necessarily unexhausted.

The United States Fifth Circuit Court of Appeals has further held that "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are considered defaulted in federal court. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted). Here, there is little doubt the Louisiana state courts would deny any new attempt by petitioner to assert his unexhausted ineffective assistance of counsel claim as procedurally barred, because any new application would

be both repetitive and untimely under articles 930.4 and 930.8 of the Louisiana Code of Criminal Procedure.[26]

As a result, petitioner's ineffective assistance of counsel claim is procedurally barred from federal review unless he demonstrates either that (1) both "cause" exists for his default and "prejudice" would result from the application of the procedural bar or (2) the Court's failure to address the claim would result in a "fundamental miscarriage of justice." See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, despite being given the opportunity to file a reply to the state's response arguing that this claim is procedurally barred,[27] petitioner filed no such reply and has made no effort whatsoever to establish cause for his default. Further, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996); accord Hughes v. Quarterman, 530 F.3d 336, 343 (5th Cir. 2008).

Because petitioner has not met the "cause and prejudice" test, his claim is barred from federal review unless the application of the procedural bar would result in a "fundamental

---

[26] In pertinent part, Article 930.4 provides:

> D.  A successive application shall be dismissed if it fails to raise a new or different claim.

> E.  A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

La. Code Crim. P. art. 930.4 (D)-(E). Article 930.8 provides that, subject to certain to exceptions which do not appear to be applicable in this case, a post-conviction application must be filed no more than two years after a petitioner's judgment of conviction and sentence became final under state law.
[27] Rec. Doc. 26 (advising petitioner that he could file a written reply memorandum to the state's responses on or before February 10, 2020).

miscarriage of justice."  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).

Here, petitioner does in fact claim that he is actually innocent.[28]  However, considering the evidence of his guilt presented at trial, including the victim's compelling testimony, he would face a daunting burden to present a credible "actual innocence" claim.  Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with *new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –* that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added).

In the instant case, petitioner has presented nothing more than his own allegations that further evidence is potentially available.  Specifically, he alleges that the victim's grand-aunt has "complete knowledge" of the victim's family dynamics, including the existence of a "family feud" between petitioner and the victim's mother which led to the allegations against him.[29]  He further alleges that the victim's mother "is ready to tell the truth about the allegations because [petitioner] shouldn't have to spend the rest of his life in prison for something he didn't do."[30]  However, he has presented no actual evidence, such as affidavits, from either of those individuals.  Moreover,

---

[28] See, e.g., Rec. Doc. 20, p. 2.
[29] Id.
[30] Id.

even if he had done so, such evidence would still fall short of the foregoing standard for two reasons.

First, that evidence would not be "new." Admittedly, it is somewhat unclear what is required for evidence to qualify as "new" in this federal Circuit, with the United States Fifth Circuit Court of Appeals observing:

> The Supreme Court has not explicitly defined what constitutes "new reliable evidence" under the Schlup actual-innocence standard, and there is a circuit split.[FN 1] "This court has yet to weigh in on the circuit split concerning what constitutes 'new' evidence." Fratta v. Davis, 889 F.3d 225, 232 (5th Cir. 2018).

> > [FN 1] See Wright [v. Quarterman,] 470 F.3d [581,] 591 [(5th Cir. 2006)] (collecting cases). The disagreement centers on whether "new reliable evidence" for the purpose of the Schlup actual innocence gateway must be newly discovered, previously unavailable evidence, or, instead, evidence that was available but not presented at trial. Compare Osborne v. Purkett, 411 F.3d 911, 920 (8th Cir. 2005) (holding that evidence is "new" only if it was unavailable at trial and could not have been discovered earlier through due diligence), and Amrine v. Bowersox 238 F.3d 1023, 1028 (8th Cir. 2001) (same), with Riva v. Ficco, 803 F.3d 77, 84 (1st Cir. 2015) (considering newly presented evidence "of opinions from a psychiatric expert that [petitioner] recently retained"), Rivas v. Fischer, 687 F.3d 514, 543 (2d Cir. 2012) (finding that "new evidence" is "evidence not heard by the jury"), Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003) ("All Schlup requires is that the new evidence is reliable and that it was not presented at trial."), and Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003) (holding that "habeas petitioners may pass Schlup's test by offering 'newly presented' evidence of actual innocence").

Hancock v. Davis, 906 F.3d 387, 389-90 (5th Cir. 2018), cert. denied, 139 S. Ct. 2714 (2019).

Nevertheless, the Fifth Circuit then went on to hold:

> Evidence does *not* qualify as "new" under the Schlup actual-innocence standard if "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." Moore [v. Quarterman, 534 F.3d [454,] 465 [(5th Cir. 2008)]. Consequently, though we have not decided what affirmatively constitutes "new" evidence, *we have explained what does not.*

Id. at 390 (emphasis added).

Here, any evidence of the purported "feud" cannot be considered new because the existence of the feud was obviously already known to petitioner, in that he was a party to it. Moreover, additional evidence of the feud was easily discoverable through reasonable investigation. For

example, petitioner notes that the victim's grand-aunt knew of the feud – and *the grand-aunt testified for the defense at trial.*[31] Therefore, she obviously could have been asked if she knew of the existence of the purported feud.

Second, even if the evidence qualified as "new," it still would not suffice to demonstrate that petitioner was actually innocent. Rather, to make a showing of actual innocence, petitioner must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." Schlup, 513 U.S. at 538.

In the instant case, the only potential value of the proposed evidence concerning the feud's existence would be to cast doubt on the credibility of the victim's allegations. However, that would have added little to the defense – *the defense had already presented ample evidence challenging the victim's credibility.* For example, the defense presented *ten* witnesses to testify that the victim's community reputation for "truthfulness and veracity" was "bad": two of the victim's neighbors;[32] two of the victim's sisters;[33] two of petitioner's sisters[34] and his niece;[35] and the victim's grand-uncle,[36] grand-aunt,[37] and grandmother.[38] There is no simply reason to believe that this additional evidence concerning the feud, which merely cast doubt on the victim's credibility, would have made any difference whatsoever in the outcome.

---

[31] State Rec., Vol. 3 of 4, trial transcript of April 1, 2015, pp. 110-115.
[32] Id. at pp. 52 and 86-87
[33] Id. at pp. 60-61 and 100.
[34] Id. at pp. 66 and 70-71
[35] Id. at p. 91.
[36] Id. at pp. 105-06
[37] Id. at pp. 112-13.
[38] Id. at p. 120.

The same is true of the proposed evidence concerning the purported statement by the victim's mother that petitioner was not guilty. The victim's mother *was not present* when the crimes occurred; therefore, her *opinion* as to whether they occurred is of little moment. Clearly, this Court cannot say that, if only the jurors had been aware of the mother's opinion, then *no* reasonable juror would have found petitioner guilty beyond a reasonable doubt.

For all of these reasons, petitioner has not made a colorable showing of actual innocence. Accordingly, his ineffective assistance of counsel claim is procedurally barred and should not be considered by this Court.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by J. D. Thompson, III, be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[39]

New Orleans, Louisiana, this ___29th___ day of July, 2020.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[39] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.